## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT J. MASTRELLA,** | : | **CIVIL ACTION NO. 1:20-CV-1037** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **LOUIS DEJOY, POSTMASTER** | : | |
| **GENERAL, UNITED STATES** | : | |
| **POSTAL SERVICE,** | : | |
| | : | |
| **Defendant** | : | |

## <u>MEMORANDUM</u>

Plaintiff Robert J. Mastrella commenced this action against his employer, the United States Postal Service, asserting claims of discrimination and retaliation under the Rehabilitation Act of 1973, 29 U.S.C. § 791 et seq., and discrimination under the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. § 4311.  Defendant Louis DeJoy is the Postmaster General of the United States Postal Service.[1]  The Postal Service moves to dismiss the first two counts of Mastrella's amended complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure (12)(b)(6) and the third count for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  For the reasons set forth below, we will grant in part and deny in part the Postal Service's motion.

---

[1] Mastrella does not specify whether he is suing DeJoy in his personal or official capacity.  Given the nature of the allegations, we assume DeJoy is being sued in his official capacity and proceed accordingly.  We will refer to both DeJoy and United States Postal Service collectively as "the Postal Service" given their linked identities.

## I. **Factual Background & Procedural History**

The Postal Service hired Mastrella as a mechanic on January 7, 1995. (See Doc. 21 ¶ 11).  Thereafter, the Postal Service promoted Mastrella to the position of "Manager, Maintenance Operations" ("MMO") at its Harrisburg, Pennsylvania processing and distribution center.[2]  (See id. ¶¶ 11, 16; id. at 81). Central to the instant matter, Mastrella is a veteran and suffers from permanent "disc and nerve loss in both legs, degenerative disc disease, osteoarthritis, sciatic inflammation and pain" as a result of his military service.  (See id. ¶ 10).  These ailments render Mastrella impaired in one or more major life activities.  (See id. ¶ 17).

In late March of 2013, Mastrella filed a complaint against the Postal Service with the Equal Employment Opportunity Commission ("EEOC") alleging his supervisor had subjected him to discrimination.  (See id. ¶ 12).  After exhausting administrative remedies, Mastrella filed a lawsuit in this judicial district on April 24, 2014.  See Mastrella v. Donahoe, No. 1:14-CV-793, Doc. 1 (M.D. Pa. Apr. 24, 2014). The court dismissed the suit on June 20, 2016, after Mastrella and the Postal Service reached a settlement.  See id., Doc. 50 (M.D. Pa. June 20, 2016); (Doc. 21 ¶ 13).

The Postal Service instituted a new staffing structure in September 2013 during the pendency of Mastrella's EEOC complaint.  (See Doc. 21 ¶¶ 12-13, 19). This staffing structure fixed the pay levels of various categories of Postal Service

---

[2] Although this term does not appear in the record, we understand the abbreviation "P&DC" as used in Mastrella's pleading to stand for "processing and distribution center."

employees to certain attributes of the facilities at which they worked.  (See id. ¶ 19; id. at 23, 101, 110-15).  In general, the greater the "craft complement" (i.e., the number of employees) at the facility, the greater the pay level for certain positions.  (See generally id. at 13-79).  Relevant here, the new staffing structure set the pay for MMOs at "two levels lower than" their immediate supervisor, the "Manager, Maintenance" ("MM").  (See id. ¶ 20; id. at 23).  The Postal Service paid Mastrella at the EAS-21 level before implementation of the new staffing structure.  (See id. at 110).  After implementation, the Postal Service elevated Mastrella to the EAS-22 level.  (See id.)  The exact difference between one EAS level versus another is unclear except that the higher the level, the higher the pay.

Mastrella alleges he became entitled to another pay increase in 2015.  (See id. ¶¶ 35-36).  On July 6, 2015, the Postal Service promulgated a "staffing letter" designating the craft complement at the Harrisburg processing and distribution center at 202 employees.  (See id. at 21, 103).  According to the 2013 staffing structure, when a facility reaches 197 or more employees, the pay level of MMOs increases by one level.  (See id. ¶ 35; id. at 21).  Mastrella's supervisor at the time, Fredrick Franco, sent an email on July 31, 2015, to a Postal Service executive overseeing maintenance operations, observing that Mastrella and two other MMOs were entitled to pay increases and making inquiry as to how to initiate the required upgrades.  (See id. ¶ 35; id. at 103).  The executive informed Franco he would forward the email to the appropriate decisionmaker.  (See id. at 103).  The amended complaint does not explain what transpired next, but it is clear the Postal Service did not increase Mastrella's pay level.  (See id. ¶ 36; id. at 103).  Nor did Mastrella

receive a pay raise in 2016 or 2017 despite the staffing level at the Harrisburg processing and distribution center remaining above the 197-employee threshold.[3] (See id. ¶¶ 37-39; id. at 106, 108).

On February 10, 2018, Debra M. Benford, President of Branch 50 of the National Association of Postal Supervisors, sent a letter to the acting plant manager of the Harrisburg processing and distribution center, asserting that Mastrella and two other MMOs were entitled to an increase from EAS-22 to EAS-23. (See id. at 111). Benford gave three justifications for why the three MMOs were entitled to pay raises: (1) the Postal Service reclassified the MMO position from EAS-22 to EAS-23 on September 7, 2013; (2) the craft staffing complement at the Harrisburg facility exceeded the 197-employee threshold; and (3) the Postal Service had assigned the MM above the three MMOs the EAS-25 salary level. (See id.) The plant manager forwarded Benford's letter to Barbara Kirchner, human resources manager for the Central PA District, inquiring whether the Postal Service owed Mastrella and the other MMOs back pay. (See id. at 110). Kirchner responded on February 12, 2018, asserting she investigated the matter. (See id.) Kirchner explained the Postal Service upgraded Mastrella from EAS-21 to EAS-22 at the time of reclassification and gave him a two percent reclassification salary increase. (See id.) She did not address the staffing level or MM-related justifications. (See id.) Nonetheless, she assured the plant manager that "everything was done properly." (See id. ¶ 41; id. at

---

[3] Mastrella's complaint does not address whether the Harrisburg processing and distribution center remained above or fell below the 197-employee threshold after 2017.

110).  The plant manager replied the next day accepting Kirchner's explanation and asking her to inform Benford.  (See id. at 110).  Mastrella pleads no additional facts related to Benford's letter.

Mastrella alleges the Postal Service became obliged to increase his pay again in March of 2018.  At the time, Mastrella was still an MMO paid at the EAS-22 level.  (See id. ¶ 21).  On March 5, 2018, the Postal Service hired a new MM, Marlon Williams, to supervise the MMOs at the Harrisburg processing and distribution center.  (See id. ¶ 22).  The Postal Service set Williams' salary at the EAS-25 level.  (See id. ¶ 22; id. at 81).  Although the staffing structure fixed the salary of MMOs at "two levels below the [MM]," (see id. ¶¶ 20, 26; id. at 23), the Postal Service failed to reciprocally increase Mastrella's salary to the EAS-23 level, (see id. ¶¶ 24-25, 28).

On March 22, 2018, Mastrella initiated contact with an EEO counselor.  (See id. ¶ 8).  Mastrella elevated his claim to the EEOC on June 28, 2018.  (See id.)  As part of its investigation, the EEOC obtained interrogatory affidavits from Williams and Kirchner.  (See id. at 81-99).  In his affidavit, dated August 27, 2018, Williams admits to being aware the staffing structure necessitates Mastrella to be paid at the EAS-23 level but denies having authority to alter pay levels or knowledge about the Postal Service's failure to increase Mastrella's pay.  (See id. at 83-86).  According to his affidavit, when Williams asked Kirchner why Mastrella and the two other MMs were not elevated to EAS-23, Kirchner indicated those decisions were made by her superiors.  (See id. at 86).  In her first affidavit, dated August 13, 2018, Kirchner reports she no longer works in the Central PA District and lacks access to most of the information requested by the EEOC.  (See id. at 91-92).  Kirchner also denies

having authority to change pay levels and explains decisions about pay levels are made at headquarters.  (See id. at 94).  As for her email to the plant manager, Kirchner claims she had no personal knowledge regarding Mastrella's pay level and relied on information provided by another human resources employee.  (See id.)  In a second affidavit, dated August 21, 2018, Kirchner states she is unable to recall specific conversations about elevating Mastrella and reiterates that responsibility for decisions on pay levels rested elsewhere.  (See id. at 98).

During the EEOC investigation of Mastrella's 2018 complaint, Simon Storey, the Postal Service's Vice President of Employee Resource Management, circulated a national memo ("the Storey memo"), freezing reclassification of all MMs (including MMOs) either up or down in pay level based upon the 2013 staffing structure.  (See id. ¶ 34; id. at 101).  According to Storey's July 20, 2018 memo, the Postal Service intended the freeze to facilitate a reorganization project likely to affect staffing criteria and facility classification.  (See id. at 101).

 Mastrella filed his amended complaint on February 1, 2021.  The Postal Service moves to dismiss Mastrella's amended complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief may be granted.

## II.   Legal Standards

### A.    Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) provides that a court may dismiss a claim for lack of subject matter jurisdiction.  See FED. R. CIV. P. 12(b)(1).  Such jurisdictional challenges take one of two forms: (1) parties may levy a "factual"

attack, arguing that one or more of the pleading's factual allegations are untrue, removing the action from the court's jurisdictional ken; or (2) they may assert a "facial" challenge, which assumes the veracity of the complaint's allegations but nonetheless argues that a claim is not within the court's jurisdiction.  Lincoln Benefit Life Co. v. AEI Life, LLC, 800 F.3d 99, 105 (3d Cir. 2015) (quoting CNA v. United States, 535 F.3d 132, 139 (3d Cir. 2008)).  In either instance, it is the plaintiff's burden to establish jurisdiction.  See Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).  Courts may grant a Rule 12(b)(1) motion based on the legal insufficiency of a claim only when it appears with certainty that assertion of jurisdiction would be improper.  See Gould Elecs. Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000).

> ### B.    Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted.  See FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents."  Mayer v. Belichick, 605

F.3d 223, 230 (3d Cir. 2010) (citing <u>Pension Benefit Guar. Corp. v. White Consol.</u>
<u>Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993)).

      Federal notice and pleading rules require the complaint to provide "the
defendant fair notice of what the . . . claim is and the grounds upon which it rests."
<u>Phillips</u>, 515 F.3d at 232 (alteration in original) (quoting <u>Bell Atl. Corp. v. Twombly</u>,
550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint, the court conducts
a three-step inquiry.  <u>See</u> <u>Santiago v. Warminster Township</u>, 629 F.3d 121, 130-31
(3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a
plaintiff must plead to state a claim.'"  <u>Id.</u> at 130 (alteration in original) (quoting
<u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a
claim must be separated; well-pleaded facts are accepted as true, while mere legal
conclusions may be disregarded.  <u>Id.</u> at 131-32; <u>see</u> <u>Fowler v. UPMC Shadyside</u>, 578
F.3d 203, 210-11 (3d Cir. 2009).  Once the court isolates the well-pleaded factual
allegations, it must determine whether they are sufficient to show a "plausible claim
for relief."  <u>Iqbal</u>, 556 U.S. at 679 (citing <u>Twombly</u>, 550 U.S. at 556); <u>Twombly</u>, 550
U.S. at 556.  A claim is facially plausible when the plaintiff pleads facts "that allow[]
the court to draw the reasonable inference that the defendant is liable for the
misconduct alleged."  <u>Iqbal</u>, 556 U.S. at 678.

**III.**    <u>**Discussion**</u>

      Mastrella's amended complaint against the Postal Service does not clearly
delineate his theories of liability.  We construe it as articulating the following
claims: discrimination in violation of the Rehabilitation Act of 1973 ("Rehab Act"),
29 U.S.C. § 791 *et seq.* (Count I); retaliation in violation of the Rehab Act (Count II);

and discrimination in violation of the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. § 4311 (Count III).  The Postal Service moves to dismiss all three claims.  We begin with Mastrella's Rehab Act discrimination claim.

## A. Discrimination Under the Rehab Act

The Rehab Act takes the protections against discrimination afforded individuals with disabilities by the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and applies them to the federal government as well as entities that receive funding from the federal government.  See Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007).  Specifically, the Rehab Act "forbids employers from discriminating against persons with disabilities in matters of hiring, placement, or advancement."  Id. (quoting Shiring v. Runyon, 90 F.3d 827, 830-31 (3d Cir. 1996)).  It also provides that "a qualified individual with a disability" cannot "be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service."  29 U.S.C. § 794(a).  The pleading requirements under the Rehab Act are identical to those for a claim under the ADA.  See Gibbs v. City of Pittsburgh, 989 F.3d 226, 229 (3d Cir. 2021); McDonald v. Pa. Dep't of Pub. Welfare, 62 F.3d 92, 94-95 (3d Cir. 1995).

To state a claim of discrimination under the Rehab Act, a plaintiff must plausibly allege that (1) he is disabled within the meaning of the Rehab Act; (2) he is otherwise qualified for the position, with or without reasonable accommodation;

and (3) he suffered an adverse employment action as a result of discrimination. See Gibbs, 989 F.3d at 229 (citing Sulima v. Tobyhanna Army Depot, 602 F.3d 177, 185 (3d Cir. 2010)).  A plaintiff need only plead "sufficient facts to raise a reasonable expectation that discovery will uncover proof of [their] claims" to survive a motion to dismiss.  Connelly v. Lane Const. Corp., 809 F.3d 780, 789 (3d Cir. 2016).

The Postal Service argues Mastrella fails to plead facts alleging that he is a "qualified individual" or that the Postal Service's failure to move him up a pay grade level was motivated by discrimination.  (See Doc. 25 at 6-8).  The Postal Service's first argument is unpersuasive.  Mastrella pleads he is "qualified to perform the essential functions of his position . . . with or without reasonable accommodations."  (Doc. 21 ¶ 18).  Mastrella does not explicitly plead that he is qualified for the EAS-23 level, but the absence of that specific averment does not mean Mastrella failed to meet the Rehab Act's threshold pleading requirements. EAS-23 is not a job; it is merely a salary level.  (See Doc. 21 at 21, 23).  The qualifications for both levels are the same; the only additional requirement for receiving the EAS-23 pay level is that an individual be an MMO when certain staffing criteria are satisfied.  (See id. at 21, 23, 103).  Mastrella alleges he is an MMO.  (See id. ¶ 21).  He also alleges the staffing criteria were satisfied.  (See id. ¶¶ 20, 22-23).  Hence, Mastrella pleads facts establishing he was "qualified" for an automatic pay raise.  (See id. ¶¶ 20-23).

The Postal Service's second argument fares better.  Liability in a disparate treatment claim "depends on whether the protected trait . . . actually motivated the employer's decision."  See Raytheon Co. v. Hernandez, 540 U.S. 44, 52 (2003)

(quoting Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993)).  A plaintiff does not need "detailed evidence" to plausibly allege discrimination, but his allegations still must "raise the reasonable expectation that discovery will uncover evidence of discriminatory motive."  See Gibbs, 989 F.3d at 230.  A complaint is sufficient to raise such a reasonable expectation when a plaintiff pleads enough facts implying discriminatory intent to "nudge[]" a discrimination claim "across the line from conceivable to plausible."  See Fowler, 578 F.3d at 212 (quoting Twombly, 550 U.S. at 570).  However, conclusory declarations that discriminatory intent motivated an adverse action are "disentitled to any presumption of truth" and, therefore, inadequate to raise a reasonable expectation when unsupported by other factual allegations.  See Connelly, 809 F.3d at 790.

Mastrella pleads no facts to substantiate his discrimination claim.  His amended complaint offers only one passive and conclusory averment on the subject, viz.: "It is believed that this failure to [increase Mastrella's salary] was motivated by discrimination . . . against [Mastrella] due to his . . . disability."  (See Doc. 21 ¶ 30).  There is not a single factual allegation in Mastrella's amended complaint suggesting any of the alleged decisionmakers discriminated against Mastrella on account of his disability.  Indeed, Mastrella's pleading and attached exhibits suggest the opposite.  Those documents mention two other MMOs who were denied the same elevation to EAS-23.  (See Doc. 21 at 84-85, 92-93, 103, 110-11).  There is no indication in Mastrella's pleadings that either of them was disabled.  Treating similarly situated nondisabled employees the same as Mastrella suggests a nondiscriminatory reason for failure to raise Mastrella's pay.  See generally Olmstead v. L.C. ex rel. Zimring,

11

527 U.S. 581 (1999) (discussing relevance of similarly situated individuals to discrimination claims under the ADA).

The absence of factual averments establishing discriminatory animus on the part of the Postal Service is fatal to Mastrella's claim as presently set forth. Mastrella's conclusory allegations do not raise a reasonable expectation that he could uncover evidence of discriminatory motive in discovery.  See Gibbs, 989 F.3d at 230.  We will grant the Postal Service's motion to dismiss Mastrella's discrimination claim under Rule 12(b)(6), with leave to amend.

### B.    Retaliation Under the Rehab Act

Like the ADA, the Rehab Act prohibits employers from punishing individuals who have "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" related to disability discrimination.  29 U.S.C. § 794(d); 42 U.S.C. § 12203(a).  To establish a prima facie case for retaliation under the Rehab Act, plaintiff must demonstrate (1) he engaged in conduct protected by the Rehab Act, (2) the employer took adverse action against him, and (3) a causal link exists between the protected conduct and the adverse action.  See Connelly, 809 F.3d at 789.  Filing an EEOC complaint constitutes protected activity.  See 29 U.S.C. § 794(d); 42 U.S.C. § 12203(a).  A plaintiff can show a causal link between a protected activity and an adverse action by establishing either unusually suggestive temporal proximity between the two events, or a pattern of antagonism coupled with timing.  See Budhun v. Reading Hosp. & Med. Ctr., 765 F.3d 245, 258 (3d Cir. 2014).

Mastrella makes two claims of retaliation in his amended complaint.  First, he alleges the Postal Service retaliated against him for filing his 2013 EEOC complaint when it failed to elevate him to the EAS-23 pay level when he first became eligible in 2015 (the "2015 retaliation claim").  (See Doc. 21 ¶¶ 35-45).  Second, he alleges the Postal Service retaliated against him for filing an EEOC complaint[4] when it issued the Storey memo on July 20, 2018, freezing reclassification of all MMs (including MMOs) either up or down in pay level based upon the 2013 staffing structure (the "2018 retaliation claim").  (See id. ¶¶ 33-34).

### 1.  *2015 Retaliation Claim*

We agree with the Postal Service that Mastrella did not timely raise the 2015 retaliation claim with the EEOC.  Applicable regulations obligate a Rehab Act plaintiff to initiate contact with an EEO counselor within 45 days of alleged discriminatory conduct and thereafter file a formal complaint with the EEOC before filing suit in federal court.  See 29 C.F.R. § 1614.105(a)(1).  Mastrella did not initiate contact with an EEO counselor until March 22, 2018.  (See Doc. 21 ¶ 8).  It is beyond peradventure that the March 22, 2018 contact is long past the 45-day deadline for an alleged act of retaliation that occurred in 2015.

The filing deadline for EEOC complaints is subject to equitable doctrines like waiver, estoppel, and equitable tolling, see Simko v. U.S. Steel Corp, 992 F.3d 198, 204 n.5 (3d Cir. 2021) (citing Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393

---

[4] Mastrella is imprecise as to which EEOC complaint he believes inspired the Storey memo.  (See Doc. 21 ¶¶ 32-45).  We will consider both the 2013 and 2018 EEOC complaints as potential protected activities underlying this retaliation claim.

(1982)), but the burden is on the plaintiff to show they are entitled to application of these doctrines, see, e.g., Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005) (describing plaintiff's burden for applying equitable tolling); Courtney v. La Salle Univ., 124 F.3d 499, 505 (3d Cir. 1997) (same for equitable estoppel).  Mastrella makes no argument that any equitable doctrine should apply.[5]  We will grant the Postal Service's motion to dismiss the 2015 retaliation claim on timeliness grounds.

### 2.  *2018 Retaliation Claim*

The Postal Service argues Mastrella's 2018 retaliation claim should be dismissed because he fails to allege a causal connection between either of his EEOC complaints and the Postal Service's decision to freeze MMO pay levels nationally. (See Doc. 25 at 10-11).  Mastrella does not plead facts directly showing that the Postal Service intended to retaliate against him when it issued the Storey memo. Instead, Mastrella relies on the timing of the Storey memo to create to render his claim plausible.  (See Doc. 26 at 9-10).

Temporal proximity is one of many factors a plaintiff can invoke to demonstrate causation.  See Connelly, 809 F.3d at 792 & n.11.  When temporal proximity is "unduly suggestive," it can even serve as satisfactory evidence to prove a causal link at the summary judgment stage.  See Shellenberger v. Summit

---

[5] Mastrella hints at an estoppel argument in his opposition brief when he states "the [pay level] policy was not followed but [Mastrella] was led to believe his supervisor was handling the issue, however, failed to do so in those years." (See Doc. 26 at 8).  We decline to construe Mastrella's statement as an estoppel argument because it is only a single sentence and cites no case law.  (See id.)  And, significantly, Mastrella pleads no facts suggesting how he could have reasonably believed his supervisor was "handling the issue" for almost three years.  (See id.)

Bancorp., Inc., 318 F.3d 183, 189 & n.9 (3d Cir. 2003) (citing Woodson v. Scott Paper Co., 109 F.3d 913, 920 (3d Cir. 1997); Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997)); see also Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989) (two days between protected activity and alleged retaliation sufficed to establish causal link). Unless temporal proximity is very close, however, the mere fact of sequential timing "will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events." See Robinson v. City of Pittsburgh, 120 F.3d 1286, 1302 (3d Cir. 1997), abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006). A gap of weeks or months, for example, is normally too remote, without more, to support a causal link. See, e.g., Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 760 (3d Cir. 2004), superseded on other grounds by statute, ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (two months inadequate to prove causal link for ADA retaliation claim); Thomas v. Town of Hammonton, 351 F.3d 108, 114 (3d Cir. 2003) (three weeks inadequate for First Amendment retaliation claim); LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232-34 (3d Cir. 2007) (three months inadequate for Title VII retaliation claim). Nonetheless, outright dismissal for failure to state a claim is usually reserved for those cases in which the temporal proximity between the protected conduct and the allegedly retaliatory adverse employment action is extremely attenuated. See, e.g., Scrip v. Seneca, 651 F. App'x 107, 111 (3d Cir. 2016) (nonprecedential) (affirming dismissal of First Amendment retaliation claim when there was a 17-month delay); Newton-Haskoor v. Coface N. Am., 524 F. App'x 808, 811 (3d Cir. 2013) (nonprecedential) (same for Title VII retaliation claim with two-

year delay); <u>Clark v. Phila. Hous. Auth.</u>, 701 F. App'x 113, 116 (3d Cir. 2017) (nonprecedential) (same for FMLA retaliation claim with four-year delay).

Almost five years separate Mastrella's 2013 EEOC complaint and the Storey memo.  The events are simply too attenuated to give rise to a reasonable expectation that discovery might produce evidence of a causal link.  <u>See</u> <u>Connelly</u>, 809 F.3d at 789.  Mastrella alleges no other facts from which we could infer causation in the intervening period.  We also note that Mastrella makes no counterargument in his opposition brief concerning the 2013 EEOC complaint. (<u>See</u> Doc. 26 at 9-10).  Thus, we consider this claim to be abandoned.

Whether the 2018 EEOC complaint and Storey memo are close enough in time to permit a retaliatory inference is a much closer question.  Mastrella initiated contact with the EEO counselor on March 22, 2018, and filed a formal complaint with the EEOC on June 28, 2018.  (<u>See</u> Doc. 21 ¶¶ 25, 28).  The Storey memo is dated July 20, 2018, during the pendency of Mastrella's complaint.  (<u>See</u> <u>id.</u> ¶ 34; <u>id.</u> at 101). The very latest the Postal Service could have received notice of Mastrella's EEOC activity is when Mastrella filed his formal EEOC complaint, just over three weeks before the Postal Service issued the Storey memo.  Three weeks' temporal proximity, standing alone, is unlikely to be adequate evidence to prove a causal link between Mastrella's EEOC complaint and the Storey memo at trial or at summary judgment.  <u>See</u> <u>Thomas</u>, 351 F.3d at 114.  But at the Rule 12 stage, it is enough to

raise a reasonable expectation discovery may reveal evidence of retaliatory motive.[6]
See Williams, 380 F.3d at 760; Thomas, 351 F.3d at 114; LeBoon, 503 F.3d at 233.
Moreover, three weeks is nowhere near the extreme separations justifying dismissal
at this procedural juncture.  Cf. Scrip, 651 F. App'x at 111; Newton-Haskoor, 524 F.
App'x at 811; Clark, 701 F. App'x at 116.  Mastrella's claim thus crosses the line from
conceivable to plausible.  See Fowler, 578 F.3d at 212.  We will deny the Postal
Service's motion to dismiss the 2018 retaliation claim under Rule 12(b)(6).

### C. Discrimination Under USERRA

USERRA prohibits employers from denying an individual any benefit of
employment because of their service—past, present, or future—in a uniformed
service.  See 38 U.S.C. § 4311(a).  The procedural path to bringing a USERRA claim
depends on the nature of the defendant.  See 38 U.S.C. § 4323-24.  If the defendant
is a private or state employer, the plaintiff can file their USERRA claim directly in
federal court.  See id. § 4323(a).  When the defendant is a "Federal executive
agency," the plaintiff must first submit their complaint to the Merit Systems
Protection Board ("MSPB").  See id. § 4324(b).  If the plaintiff is dissatisfied with a
decision of the MSPB, they may appeal that decision to the United States Court of
Appeals for the Federal Circuit.  See id. § 4324(d)(1).

---

[6] We acknowledge the Postal Service's suggestion that the national scope of
the Storey memo cuts against any causal link.  (See Doc. 25 at 3).  That argument is
more appropriately addressed at the Rule 56 stage or at trial, on a fully developed
factual record.

The Postal Service constitutes a federal executive agency for purposes of USERRA.  See 38 U.S.C. § 4303(5); see also Yates v. Merit Sys. Prot. Bd., 145 F.3d 1480, 1483 (Fed. Cir. 1998).  Therefore, the MSPB and the Federal Circuit enjoy jurisdiction over any USERRA claim Mastrella might possess against the Postal Service—not this court.  See 38 U.S.C. § 4324(b); Dew v. United States, 192 F.3d 366, 372 (2d Cir. 1999) (holding that the federal courts lack subject matter jurisdiction over USERRA claims made against federal agencies).  Mastrella's USERRA claim must be dismissed for lack of subject matter jurisdiction.  See Dew, 192 F.3d at 372; see also Gould Elecs., 220 F.3d at 178.

## IV.   Conclusion

We will grant in part and deny in part the Postal Service's motion (Doc. 24) to dismiss Mastrella's amended complaint.  To the extent Mastrella's claims are factually rather than legally deficient, we will grant Mastrella a final opportunity to amend his pleading, consistent with this memorandum.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).  An appropriate order shall issue.


/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:    November 18, 2021